IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RYAN MICHAEL DOUGLAS                                                                                  PLAINTIFF

v.                              Civil No.   12-2070

CAPTAIN JEFF MARVIN, Crawford
County Detention Center                                                                               DEFENDANT

### MEMORANDUM OPINION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  The Plaintiff, Ryan M. Douglas, proceeds *pro se* and *in forma pauperis*.  The case is before me on the consent of the parties (Doc. 12).

Before me for decision is the Defendant's motion for summary judgment (Docs.15-17). Plaintiff filed a response (Doc. 24) to the motion.  The motion is ready for decision.

### 1.  Background

Plaintiff is now incarcerated in the Arkansas Department of Correction, North Central Unit. At all times relevant to this complaint, he was incarcerated in the Crawford County Detention Center (CCDC).

On or about February 8, 2012, Douglas and another inmate, Jesse Darnell, were placed in lock-down.  *Plaintiff's Response* (hereinafter *Plff's Resp.*) at ¶ 2.  On the day in question, guards were passing out commissary.  *Plff's Resp.* at ¶ 2.  Deputy Stevens responded to a commotion coming from cell 4.  *Defendant's Exhibit* (hereinafter *Deft's Ex.*) A.  Stevens' incident report states that he saw inmate Douglas grabbing Mark Thornsberry's commissary and "tossing it all over the room."  *Id.*  A search of Douglas and Inmate Darnell revealed that they were in possession of Thornberry's missing commissary items.  *Id.*  The incident was reported to Captain Marvin; he

informed Stevens and Deputy Ridenour to place both inmates on lock down in cell 2C for 5 days for theft of property. *Id.* According to Stevens, he informed the inmates of their right to a lock down hearing. *Id.*

Douglas does not deny he was involved in the commotion or that he had another inmate's commissary items. Instead, he merely asserts that Stevens saw him kicking another inmate's commissary not tossing it around. *Plff's Resp.* at ¶ 6.

With respect to the lock down cell, Douglas alleges there was no light in the cell and no hot water. *Plff's Resp.* at ¶ 1. He had access to cold water but says the toilet was turned off. *Id.* at ¶ 4(a). He asserts that he was unable to sterilize his hands without hot water. *Id.* As a result of these conditions, Douglas asserts that he "got a little cold." *Id.*

He was provided three meals a day. *Plff's Resp.* at ¶ 4(b). He had a mattress to sleep on. *Id.*

Because there was no light, he asserts that he could not write his attorney. *Plff's Resp.* at ¶ 3. He maintains his criminal case was adversely affected because his attorney failed to inform him of the witnesses who would testify against him and he was unable to write his attorney to obtain this information. *Id.* at ¶ 3(a).

Douglas maintains he was locked down for approximately two weeks. *Plff's Resp.* at ¶ 1. He did not file a grievance about being on lock down. *Id.* at ¶ 5. He states he asked for a grievance form on two occasions but was not provided one. *Id.* Towards the end of his lock down, Douglas maintains Inmate Teas wrote a grievance for him. *Id.* Douglas also maintains that neither he nor Darnell were told they had a right to a lock down hearing. *Plff's Resp.* at ¶¶ 9-11.

On February 17th, Douglas submitted a grievance requesting that twenty-one cents (21¢) be placed back on his books. *Plff's Resp.* at ¶ 12; *Deft's Ex.* B. The grievance makes no mention of

the lock down or the conditions of the cell. Additionally, the grievance form indicates Douglas was off lock down and in cell block 2B. *Plff's Resp.* at ¶¶ 13-14.

Douglas believes Marvin violated his constitutional rights but putting him on lock down in "harmful, non-healthy, conditions." *Plff's Resp.* at ¶ 15. Douglas believes Marvin was aware of the conditions in the cell. *Id.* Douglas asserts that after he was released from lock down Marvin had the lights repaired. *Id.* Douglas maintains that he should not have to ask to have the hot water fixed or the lights repaired. *Id.* at ¶ 17. He asserts that all detention center staff were aware of the problem. *Id.*

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**3. Discussion**

Marvin has moved for summary judgment on a variety of arguments. First, he notes that Douglas was aware of the CCDC grievance procedure but never filed any grievances relating to the subject matter of this lawsuit. Second, Marvin contends that no claim has been stated against him. Third, Marvin argues that Douglas was notified of his right to a lock down hearing and chose not to take advantage of the right. Finally, even assuming Douglas was housed in a dark cell with no hot water for two weeks, Marvin maintains that given the short duration of the confinement it is not sufficiently serious to amount to a constitutional violation.

I will address the exhaustion issue first as a finding in favor of the Defendant on the exhaustion issue is fatal to Douglas' claims. Marvin maintains that Douglas' claims must be dismissed because Plaintiff did not exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA) prior to filing this lawsuit.

The PLRA, 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 534 (2002). In *Booth v. Churner*, 532 U.S. 731, 738-39 (2001), the Court held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001). "If an inmate fails to exhaust one or more discrete claims raised in a § 1983 complaint, the PLRA requires only that the unexhausted

claim or claims be dismissed–it does not require that the complaint be dismissed it its entirety." *Id.*

In this case, Douglas has sworn under penalty of perjury that he requested grievance forms and was denied those forms while he was on lock down. When detention center officials deny an inmate access to grievance forms, they cannot rely on the defense that the inmate failed to exhaust his remedies. *See e.g., Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)(prisoner's allegations that prison officials denied his requests for grievance forms could raise inference that he was prevented from utilizing prison's administrative remedies; remedy that prison officials prevent prisoner from utilizing is not "available" under § 1997e(a)). The evidence in this case establishes that by no later than February 17th, Douglas had access to those forms.

In this case, there is no question that a grievance procedure existed; Douglas was aware of it; and he failed to submit grievances regarding the claims at issue in this case. Douglas cannot rely on a grievance filed by another inmate to comply with the exhaustion requirement. *See e.g., Roberson v. Martens*, 2010 WL 3779544 (W.D. Mich. August 25, 2010)(Grievance filed by another inmate "did not exhaust plaintiff's administrative remedies, because it was not plaintiff's grievance"); *Cf Shariff v. Coombe*, 655 F. Supp. 2d. 274, 288 (S.D.N.Y. 2009)("Plaintiffs' related argument that a grievance filed by one inmate that receives a favorable determination should suffice for all inmates is . . . unavailing.").

### 4. Conclusion

For the reasons stated, Defendant's motion for summary judgment (Docs. 15-17) will be granted. A separate order in accordance with this opinion will be entered.

DATED this 12thday of June 2013 .

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE